FILED

2013 MAR 21  P 2:52

CLERK RICHARD W. WIEKING
U.S. DISTRICT COURT
N. DIST. OF CALIF.

NC

1  Jon Tostrud (SBN 199502)
2  **TOSTRUD LAW GROUP, PC**
   1901 Avenue of the Stars, Suite 200
3  Los Angeles, CA 90067
   TEL.: (310) 278-2600
4  Fax: (310) 278-2640
   jtostrud@tostrudlaw.com
5

6
   *Attorneys for Plaintiffs*
7
   [Additional Counsel on Signature Page]
8

9              **UNITED STATES DISTRICT COURT**

10       **FOR THE NORTHERN DISTRICT OF CALIFORNIA**

11

12                                    Case No.
13  TRACI WALLERSTEIN, on behalf of herself          **13     1284**
    and all others similarly situated,
14                                    **CLASS ACTION COMPLAINT**
              Plaintiff,
15                                    **DEMAND FOR JURY TRIAL**
16      v.

17  DOLE FRESH VEGETABLES, INC.

18              Defendant.

19

20

21

22

23

24

25

26

27

28

                              -1-

Plaintiff, by her undersigned counsel, as and for her class action complaint, alleges, with personal knowledge as to her own actions, and upon information and belief as to those of others, as follows:

## NATURE OF THE CASE

1.    Plaintiff brings this proposed class action against Dole Fresh Vegetables, Inc. ("Dole" or "Defendant") for misleading consumers about the nature of the unnatural and dangerous ingredients in Dole's All Natural Dole Salad Kits (the "Salad Kits" or "Products") namely:

        a.   Asian Island Crunch Kit

        b.   Caesar Salad Kit

        c.   Endless Summer

        d.   Garlic Caesar Salad Kit

        e.   Light Caesar Salad Kit

        f.   Perfect Harvest Salad Kit

        g.   Southwest Salad

        h.   Spinach Cherry Almond Bleu

        i.   Ultimate Caesar

        j.   Value Size Caesar Kit

2.    Beginning in 2010, Defendant engaged and continues to engage in a widespread, uniform marketing campaign using the Salad Kits packaging, website, and advertisements to mislead consumers about the nature of the ingredients in the Salad Kits. Defendant prominently places the label "All Natural" on the Salad Kits packaging, even though Defendant knows such statements are false, deceptive, misleading, and unfair. In fact, the Salad Kits contain synthetic unnatural ingredients. Dole's representation that the Salad Kits are "All Natural" is material and

central to the marketing of the Salad Kits and is the means by which Defendant (falsely)

differentiates the Products from other comparable salad products.

3.     The "All Natural" claim is prominently displayed, not only on the Salad Kits' front packaging, but also on Dole's website and in Dole's advertisements.  Unfortunately for consumers, the Salad Kits are not natural.  Rather, the Salad Kits contain the following unnatural synthetic ingredients:

    a.  Asian Island Crunch Kit: Xanthan Gum

    b.  Caesar Salad Kit: Xanthan Gum

    c.  Endless Summer: Xanthan Gum

    d.  Garlic Caesar Salad Kit: Xanthan Gum

    e.  Light Caesar Salad Kit: Xanthan Gum, Sodium Benzoate, Phosphoric Acid, and Ascorbic Acid

    f.  Perfect Harvest Salad Kit: Xanthan Gum

    g.  Southwest Salad: Xanthan Gum, Sodium Benzoate, and Phosphoric Acid

    h.  Spinach Cherry Almond Bleu: Xanthan Gum

    i.  Ultimate Caesar: Xanthan Gum, Sodium Benzoate, and Ascorbic Acid

    j.  Value Size Caesar Kit: Xanthan Gum

4.     In marketing its Salad Kits as "All Natural," Dole misled Plaintiff and Class members into believing that the Salad Kids were "All Natural," when, in fact, they are not because the Salad Kits contain synthetic ingredients.

5.     Through its deceptive practice of marketing and selling its Products as "All Natural" despite the presence of synthetic ingredients, Defendant was able to command a premium price by deceiving consumers about the attributes of the Products and distinguishing the Products

from similar products. Defendant was motivated to mislead consumers for no other reason than to take away market share from competing products, thereby increasing its own profits.

6. "Unnatural" is a defining characteristic of synthetic ingredients.

7. Because the Salad Kits contain synthetic unnatural ingredients, Defendant's "All Natural" claim on the Product labeling and in the Product marketing is false, misleading, and designed to deceive consumers into purchasing the Products. By labeling and advertising its products as "All Natural" Defendant creates the impression amongst reasonable consumers that the Products are all natural. However, Defendant fails to adequately inform consumers that its Products contain synthetic unnatural ingredients.

8. Plaintiff brings this action to stop Defendant's misleading practice. Were it not for Defendant's unfair and deceptive practices, Plaintiff and the Class would not have purchased Defendant's "Active Naturals" or paid a price premium to purchase them.

## JURISDICTION AND VENUE

9. This court has jurisdiction over all causes of action asserted herein, pursuant to 28 U.S.C. § 1332(d), because the aggregate claims of the Class (as defined below) exceed the sum or value of $5,000,000.00, and there is diversity of citizenship between proposed Class members and Defendant.

10. Venue is proper in this district pursuant to 28 U.S.C. § 1391(a)(1) and (2). Substantial acts in furtherance of the alleged improper conduct, including the dissemination of false information regarding the Products, occurred within this District, and Defendant's principle place of business is in this District.

## PARTIES

11. Plaintiff Traci Wallerstein is a citizen of New York. Ms. Wallerstein bought the Asian Island Crunch Kit and Light Caesar Salad Kit in New York during the Class Period, prior to

-4-

the commencement of this action.  Plaintiff relied upon the "All Natural" statement on the Salad

Kits' labels in deciding to purchase the Products.  Had Plaintiff known at the time that the Products

were not, in fact, natural products but were, instead, made with unnatural, synthetic ingredients,

Plaintiff would not have purchased the Products or paid a price premium to purchase them.

12.     Defendant Dole Fresh Vegetables, Inc. is a California company with its principal

place of business at 2959 Monterey Salinas Highway, Monterey, CA 93942.  Defendant markets

its Products to consumers and sells its Products to distributors throughout the United States.

## SUBSTANTIVE ALLEGATIONS

13.     Dole has sold, and continues to sell, the following ten (10) varieties of Salad Kits: (i)

Asian Island Crunch Salad Kit; (ii) Caesar Salad Kit; (iii) Endless Summer Salad Kit; (iv) Garlic

Caesar Salad Kit; (v) Light Caesar Salad Kit; (vi) Perfect Harvest Salad Kit; (vii) Southwest Salad

Kit; (viii) Spinach Cherry Almond Bleu Salad Kit; (ix) Ultimate Caesar Salad Kit; and (x) Value

Size Caesar Kit Salad Kit.

14.     Each Salad Kit is sold with a label on the front of the Product that prominently states

"All Natural."

15.     Defendant's website also makes the "All Natural" representation in connection with

the Salad Kits, stating "All Natural Salad Kits:  Inspire your next meal with DOLE All Natural

Salad Kits. Everything you need to start an exciting meal is in one bag."

http://www.dolesalads.com/Products/Home

16.     In October 2010, Dole stated that it was reimagining its salad blend products with

"all-natural kits." Dole explained that "extensive consumer research efforts related to the re-launch

of Dole's complete line of packaged salad blends last year found that fresh lettuce and other

vegetables alone were not enough to meet consumers' needs.  Consumers wanted salad toppings

and dressings included in the salad kits to be all-natural as well.  In response, the company took its nine salad kits and introduced **All Natural DOLE Salad Kits**." (Emphasis in original.)

17.    Nutrition-related health claims on products cause consumers to believe those products are healthier than other products and to be more willing to purchase products with such claims. *See* Karen N. Peart, *Parents Often Misled by Health Claims on Children's Cereal Packages*, Yale News (Aug. 10, 2011), http://opac.yale.edu/news/article.aspx?id=8782 (last visited Nov. 5, 2012). Furthermore, "labels can strongly impact consumer behavior."[1] Consumers, including Plaintiff, frequently rely on label representations and information in making purchase decisions. Defendant makes claims regarding the "naturalness" and "healthfulness" of the Products to induce consumers to purchase its Products over competing ones and to pay a premium for those Products over competing ones.

18.    American consumers are increasingly seeking "all natural" ingredients in the foods they purchase. Consumers desire "all natural" ingredients in food products for a number of reasons, which include wanting to live a healthier lifestyle, perceived benefits in avoiding disease and other chronic and debilitating conditions caused by unnatural synthetic ingredients, as well as to increase weight loss and avoid chemical additives in their food. The "all natural" branding also appears to appeal to individual consumers' interest in supporting sustainable living and environmentally sensitive food consumption.

19.    "Natural" products are a fast growing market within the natural food industry, enjoying over $81 billion in total revenue in 2010.

20.    In order to capture this growing market, Defendant labels and advertises its products as "all natural." The packaging of the Subject Products states that it is: "Now All Natural, No Artificial Ingredients. No Artificial Preservatives."

---

[1] Packaging's Role in Deterring Junk Food Consumption, by Linda Casy, Packaging Digest. April 11, 2011.

21.     Defendant's claims about the benefits of its Products are false because products containing synthetic ingredients are unnatural by definition. A reasonable consumer would understand that Defendant's Products do not contain synthetic, unnatural ingredients.

22.     The packaging for Dole's Asian Island Crunch salad kit with the "All Natural" label is displayed below.



23.     Similarly, below is the Light Caesar salad kit with the "All Natural" label.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22



23  24. The back of the light Caesar states "Dole brings you all-natural, perfectly balanced

24
25 salads made in a snap! . . .. Our all-natural Light Caesar Salad Kit contains Dole's Own Light

26 Caesar Dressing & oven-baked garlic croutons in a bed of crisp Romaine lettuce."

27
28

-8-

25.     Although Dole uniformly represents that the Salad Kits are "All Natural," in fact, the Salad Kits are not "All Natural" because each Salad Kit contains one or more of the following synthetic, artificial ingredients:

    a. **Xanthan Gum** - Xanthan gum is a polysaccharide secreted by the bacterium Xanthomonas campestris. It is produced by the fermentation of glucose, sucrose, or lactose. After a fermentation period, the polysaccharide is precipitated from a growth medium with isopropyl alcohol, dried, and ground into a fine powder. Later, it is added to a liquid medium to form the gum. Xanthan Gum is recognized as a synthetic ingredient. *See* 7 C.F.R. § 205.605(b).

    b. **Ascorbic Acid** - Ascorbic Acid is a synthetic form of vitamin C. Ascorbic Acid is a recognized synthetic by federal regulation. 7 C.F.R. § 205.605(b).

    c. **Phosphoric Acid** - Phosphoric Acid is synthesized through the reaction of sulfuric acid and tricalcium phosphate and is recognized as a synthetic ingredient by federal regulation. *See* 7 C.F.R. §205.605(b).

    d. **Sodium Benzoate** - Sodium benzoate is the chemical benzoate of soda ($C7H5Na02$), produced by the neutralization of benzoic acid with sodium bicarbonate, sodium carbonate, or sodium hydroxide and is recognized as a synthetic ingredient by federal regulation. 21 C.F.R. § 184.1733(a) ("The salt is not found to occur naturally.")

26.     Defendant's claims about the benefits of its Salad Kits are false because products containing synthetic ingredients are unnatural by definition. A reasonable consumer would understand that Defendant's Salad Kits do not contain synthetic, unnatural ingredients.

27.     Moreover, Dole's representation on the front of the package that the Products contain "No Artificial Preservatives" is false and misleading. In fact, sodium benzoate is a preservative that is artificial and not found in foods unless it is added as a preservative. When sodium benzoate combines with ascorbic acid (an unnatural ingredient Defendant also adds to certain of its Salad Kits), benzene can form, which is a known carcinogen. Consumers purchasing "all natural" products that contain no "artificial preservatives" do so because they wish to avoid consuming precisely the artificial preservatives Defendant uses.

28.     Despite knowing that synthetic ingredients are not natural and that its Salad Kits contain synthetic ingredients, Defendant has engaged in a widespread marketing and advertising campaign to portray the Products as "All Natural" and to otherwise represent that the Salad Kits are natural. Defendant engaged in this misleading and deceptive campaign to charge a premium and take away market share from other similar products.

29.     Research shows that products purported to be "natural," such as the Salad Kits, are often priced higher than equivalent products, suggesting that companies, including Defendant, are taking advantage of consumer confusion between certified organic labels and the often deceptive "all natural" label. *See* Cornucopia Institute, Cereal Crimes: How "Natural" Claims Deceive Consumers and Undermine the Organic Label – A Look Down the Cereal and Granola Aisle, at 29 (2011), available at http://www.cornucopia.org/2011/10/natural-vs-organic-cereal/.

30.     Here, Plaintiff and the other Class members reasonably relied to their detriment on Defendant's misleading representations and omissions. Defendant's misleading affirmative statements that the Salad Kits were "All Natural," as well as its other statements indicating the Products were natural and did not contain artificial preservatives, obscured the material facts that Defendant failed to disclose about the unnaturalness of its Products, including in particular the fact that the Products contain synthetic ingredients and artificial preservatives.

31.     Plaintiff and the other Class members were among the intended recipients of Defendant's deceptive representations and omissions described herein. Defendant's deceptive representations and omissions, as described herein, are material in that a reasonable person would attach importance to such information and would be induced to act upon such information in making purchase decisions. Plaintiff purchased the Salad Kits because she wanted "all natural" products.

32.   Plaintiff was injured by Defendant's deceptive representations and omissions because she would not have purchased the Salad Kits had they been truthfully advertised and labeled and because she paid a price premium for Defendant's Products.

33.   The materiality of the representations and omissions described herein also establishes causation between Defendant's conduct and the injuries sustained by Plaintiff and the Class members.

34.   Defendant's false, misleading, and deceptive misrepresentations and omissions, as described herein, are likely to continue to deceive and mislead reasonable consumers and the general public. Indeed, they have already deceived and misled Plaintiff and the other Class members.

35.   In making the false, misleading, and deceptive representations and omissions, Defendant knew and intended that consumers would pay a premium for the Salad Kits over comparable products that are not "All Natural" or that consumers would elect to purchase the Salad Kits instead of otherwise not purchasing the Salad Kits.

36.   35.   As a direct and proximate result of Defendant's misrepresentations and/or omissions, Defendant injured Plaintiff and Class members in that they:

   a.   paid a sum of money for products that were not as represented;

   b.   paid a premium price for products that were not as represented;

   c.   were deprived the benefit of the bargain because the Products they purchased were different than what Defendant warranted;

   d.   were deprived the benefit of the bargain because the Products they purchased had less value than what was represented by Defendant;

   e.   did not receive products that measured up to their expectations as created by Defendant;

-11-

f.  ingested a substance that was other than what was represented by Defendant;

g.  ingested a substance that Plaintiff and the members of the Class did not expect or consent to;

h.  ingested products that were artificial, synthetic, or otherwise unnatural;

i.  ingested products that did not bring the health benefits Defendant promised;

j.  ingested a substance that was of a lower quality than what Defendant promised;

k.  were denied the benefit of knowing what they ingested;

l.  were denied the benefit of truthful food labels;

m.  were forced to unwittingly support an industry that contributes to environmental, ecological or health damage;

n.  were denied the benefit of supporting an industry that sells all-natural foods and contributes to environmental sustainability; and

o.  were denied the benefit of the beneficial properties of the all-natural foods promised.

37.  Plaintiff and the other Class members all paid money for the Salad Kits. However, Plaintiff and the other Class members did not obtain the full value of the advertised Products due to Defendant's misrepresentations and omissions, as detailed herein. Plaintiff and the other Class members purchased, purchased more of, or paid more for, the Salad Kits than they would have had they known the truth about the Products' unnaturalness. Accordingly, Plaintiff and the other Class members have suffered injury in fact and lost money or property as a result of Defendant's wrongful conduct. As the intended, direct, and proximate result of Defendant's false, misleading,

and deceptive representations and omissions, Defendant has been unjustly enriched through more sales of unnatural products and higher profits at the expense of Plaintiff and the Class.

38.     Defendant's widespread marketing campaign portraying the Products as "All Natural" and otherwise representing them to be natural, as detailed herein, is misleading and deceptive to consumers because the Salad Kits are made with unnatural, synthetic ingredients. Defendant's Product labeling, marketing, and other materials do not disclose this fact by means of qualifying language or otherwise remedy the deception.  Plaintiff brings this action on behalf of the proposed Class to stop Defendant's misleading practice.

39.     Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of the following Class (the "Class"):

> All persons who purchased Defendant's Products.  Excluded from the Class are current and former officers and directors of Defendant, members of the immediate families of the officers and directors of Defendant, Defendant's legal representatives, heirs, successors, or assigns, and any entity in which they have or have had a controlling interest.  Also excluded from the Class is the judicial officer to whom this lawsuit is assigned.

40.     In the alternative, Plaintiff brings this action on behalf of herself and all other similarly situated New York consumers pursuant to Rule 23 of the Federal Rules of Civil Procedure and seeks certification of the following Class:

> All persons who purchased Defendant's Products in New York. Excluded from the Class are current and former officers and directors of Defendant, members of the immediate families of the officers and directors of Defendant, Defendant's legal representatives, heirs, successors, or assigns, and any entity in which they have or have had a controlling interest. Also excluded from the Class is the judicial officer to whom this lawsuit is assigned.

41.     Plaintiff reserves the right to revise the Class definitions based on facts learned in the course of litigating this matter.

42.     Class members are so numerous that joinder of all members is impracticable.

-13-

43.    There is a well-defined community of interest in the questions of law and fact affecting the parties represented in this action.

44.    Questions of law and fact common to the members of the Class that predominate over questions that may affect individual Class members include but are not limited to:

      a.  Whether Defendant labeled, marketed, advertised, and/or sold the Products to Plaintiff and those similarly situated using false, misleading, and/or deceptive statements or representations, including statements or representations concerning the ingredients of the Products;

      b.  Whether Defendant omitted and/or misrepresented material facts in connection with the sales of the Products;

      c.  Whether Defendant participated in and pursued the common course of conduct complained of herein;

      d.  Whether Defendant's false and/or misleading statements of fact and concealment of material facts regarding the representations that its products are "all natural" are likely to deceive the public;

      e.  Whether, by the misconduct set forth in this Complaint, Defendant violated California Business & Professions Code § 17200 *et seq.*;

      f.  Whether, by the misconduct set forth in this Complaint, Defendant violated the California Civil Code §1750 *et seq.*;

      g.  Whether, by the misconduct set forth in this Complaint, Defendant violated the New York G.B.L. § 349;

      h.  Whether, as a result of Defendant's misconduct as alleged herein, Plaintiff and the Class are entitled to injunctive relief and other remedies to which

Class members are entitled as a result of Defendant's wrongful conduct, and, if so, the amount and nature of such relief; and

    i.   Whether Defendant has been unjustly enriched.

45.    Plaintiff's claims are typical of those of the Class members because Plaintiff and the other class members sustained damages arising out of the same wrongful conduct as detailed herein.

46.    Plaintiff will adequately protect the interests of the Class members. Plaintiff has retained counsel that are experienced in litigating complex class actions. Neither Plaintiff nor his counsel have any interests adverse to those of the other Class members.

47.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy. The damages suffered by any individual class member are too small to make it economically feasible for an individual class member to prosecute a separate action and it is desirable for judicial efficiency to concentrate the litigation of the claims in this forum. Furthermore, the adjudication of this controversy through a class action will avoid the potentially inconsistent and conflicting adjudications of the claims asserted herein. There will be no difficulty in the management of this action as a class action.

48.    The prerequisites to maintaining a class action for injunctive or equitable relief pursuant to Rule 23(b)(2) are met, as Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive or equitable relief with respect to the Class as a whole.

49.    The prosecution of separate actions by members of the Class would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Defendant. Additionally, individual actions may be dispositive of the interests of all members of the Class, although certain Class members are not parties to such actions.

-15-

50.     Defendant's conduct is generally applicable to the Class as a whole and Plaintiff seeks, inter alia, equitable remedies with respect to the Class as a whole.  As such, Defendant's systematic policies and practices make declaratory relief with respect to the Class as a whole appropriate.

## COUNT I
### Unfair Business Practices Act
### California Business & Professions Code § 17200 *et seq.*

51.     Plaintiff, on behalf of himself and on behalf of all others similarly situated, realleges and incorporates herein by reference each of the foregoing paragraphs.

52.     The Unfair Competition Law, Business & Professions Code §17200, et seq. ("UCL") and similar laws in other states, prohibit any "unlawful," "fraudulent" or "unfair" business act or practice and any false or misleading advertising.

53.     In the course of conducting business, Defendant committed unlawful business practices by, *inter alia*, making false and misleading representations concerning its Salad Kits (which also constitutes advertising within the meaning of § 17200) and omissions of material facts, as set forth more fully herein, and violating Civil Code §§1572, 1573, 1709, 1711, 1770 and Business & Professions Code §§17200, *et seq.*, 17500, *et seq.*, and the common law.

54.     Plaintiff and the Class reserve the right to allege other violations of law, which constitute other unlawful business acts or practices.  Such conduct is ongoing and continues to this date.

55.     Defendant's actions also constitute "unfair" business acts or practices because, as alleged above, *inter alia*, Defendant engaged in false, deceptive and misleading representations in regard to the "all natural" nature of its food products, and thereby offended an established public policy, and engaged in immoral, unethical, oppressive, and unscrupulous activities that are substantially injurious to consumers. Defendant's conduct is unfair in that the harm to Plaintiff and

-16-

the Class arising from Defendant's conduct outweighs the utility, if any, of those practices. The facts concealed and omitted are material facts in that a reasonable consumer would have considered them important in deciding whether or not to purchase Defendant's products.

56.    As a result of Defendant's practices, Plaintiff suffered injury in fact and lost money or property. As a direct and proximate result of the acts and practices alleged above, pursuant to California Business & Professions Code § 17203, Plaintiff and the Class are therefore entitled to: (a) an Order requiring Defendant to cease the acts of unfair competition alleged herein; (b) full restitution of all monies paid to Defendant as a result of its deceptive practices, including, but not limited to, disgorgement of all profits derived from the sale of the Unnatural Products; (c) interest at the highest rate allowable by law; and (d) the payment of Plaintiff's attorneys' fees and costs pursuant to, inter alia, California Code of Civil Procedure § 1021.5.

**COUNT II**
**Violations of the Consumers Legal Remedies Act –**
**Civil Code §1750 *et seq.***

57.    Plaintiff, on behalf of himself and on behalf of all others similarly situated, realleges and incorporates herein by reference each of the foregoing paragraphs.

58.    At all relevant times, Plaintiff and each proposed Class member was a "consumer," as that term is defined in Civil Code § 1761(d).

59.    At all relevant times, the Unnatural Products were "goods," as that term is defined in Civil Code § 1761(a).

60.    At all relevant times, Defendant was a "person," as that term is defined in Civil Code § 1761(c).

61.    At all relevant times, Plaintiff's and each proposed Class member's purchase of the Unnatural Products constituted a "transaction," as that term is defined in Civil Code § 1761(e).

-17-

62.     The policies, acts, and practices described in this Complaint were intended to and did result in the sale of the Unnatural Products to consumers.

63.     Defendant's practices, acts, policies, and course of conduct violated the CLRA, Civil Code § 1750 *et seq.*, in that Defendant represented that the Unnatural Products were of a particular standard or quality, when they were of another, in violation of § 1770(a)(7) of the CLRA.

64.     Defendant's practices, acts, policies, and course of conduct violated the CLRA in that Defendant represented that the Unnatural Products have characteristics, uses and benefits which they do not have, in violation of § 1770(a)(5) of the CLRA.

65.     Defendant's practices, acts, policies, and course of conduct violated the CLRA in that Defendant advertising goods with intent not to sell them as advertised in violation of § 1770(a)(9) of the CLRA.

66.     Defendant's practices, acts, policies, and course of conduct violated the CLRA in that Defendant represented that a transaction confers or involves rights, remedies, or obligations which it does not have, in violation of § 1770(a)(14) of the CLRA.

67.     Defendant's practices, acts, policies, and course of conduct violated the CLRA in that Defendant represented that the Salad Kits had been supplied in accordance with a previous representation when they were not.

68.     Pursuant to California Civil Code §1782(d), Plaintiff and the Class seek a Court order enjoining the above-described wrongful acts and practices of Defendant and for restitution and disgorgement.

69.     Pursuant to §1782 of the Act, Plaintiff notified Defendant in writing by certified mail of the particular violations of §1770 of the Act and demanded that Defendant rectify the problems associated with the actions detailed above and give notice to all affected consumers of Defendant's intent to so act.

-18-

70.   If Defendant fails to rectify or agree to rectify the problems associated with the actions detailed above and give notice to all affected consumers within 30 days of the of written notice pursuant to §1782 of the Act, Plaintiff will amend this Complaint to add claims for actual, punitive and statutory damages, as appropriate.

## COUNT III
## Breach of Express Warranty

71.   Plaintiff repeats and re-alleges the allegations contained in the paragraphs above, as if fully set forth herein.

72.   As discussed above, Defendant expressly warranted on each and every container of the Salad Kits that they were "All Natural"

73.   The "All Natural" representations made by Defendant are an affirmation of fact that became part of the basis of the bargain and created an express warranty that the goods would conform to the stated promise.

74.   Plaintiff placed importance on Defendant's representations.

75.   Defendant breached these warranties by providing Products that contained synthetic ingredients and that did not otherwise conform to Defendant's warranties.

76.   This breach resulted in damages to Plaintiff and the other members of the Class who bought Defendant's Products but did not receive the goods as warranted in that the Products were not natural because they contained synthetic ingredients.

77.   As a proximate result of Defendant's breach of warranties, Plaintiff and the other Class members have suffered damages in an amount to be determined by the Court and/or jury, in that, among other things, they purchased and paid for Products that did not conform to what Defendant promised in its Product promotion, marketing, advertising, packaging, and labeling, and they were deprived of the benefit of their bargain and spent money on Products that did not have

-19-

any value or had less value than warranted or Products that they would not have purchased and used had they known the true facts about them.

## COUNT IV
### Unjust Enrichment

78.     Plaintiff repeats each and every allegation contained in the paragraphs above and incorporates such allegations by reference herein.

79.     As a result of Defendant's deceptive, fraudulent, and misleading labeling, advertising, marketing, and sales of the Products, Defendant was enriched at the expense of Plaintiff and the other Class members, through the payment of the purchase price for Defendant's Products, as well as the payment of a price premium caused by Defendant's representation that the products are "All Natural."

80.     Under the circumstances, it would be against equity and good conscience to permit Defendant to retain the ill-gotten benefits that it received from Plaintiff and the other Class members in light of the fact that the Products purchased by Plaintiff and the other Class members were not what Defendant purported them to be.  Thus, it would be unjust or inequitable for Defendant to retain the benefit without restitution to Plaintiff and the other Class members for the monies paid to Defendant for such Products.

## COUNT V
### Violation of the New York General Business Law § 349 – In the Alternative

81.     Plaintiff repeats each and every allegation contained in the paragraphs above and incorporates such allegations by reference herein.

82.     As detailed more fully herein, Defendant engaged in deceptive acts and practices by falsely and misleadingly marketing its Products to consumers, including the use of false and misleading Product labeling.

83. As fully alleged above, by advertising, marketing, distribution, and/or selling the Products to Plaintiff and the other members of the Class, Defendant engaged in and continues to engage in deceptive acts, practices and omissions.

84. Plaintiff and the other members of the Class further seek to enjoin such unlawful deceptive acts and practices as described above. Each of the Class members will be irreparably harmed unless the unlawful actions of the Defendant are enjoined in that Defendant will continue to falsely and misleadingly advertise the Products as "All Natural" and other similar representations, as detailed more fully herein, when in fact the Products contain synthetic ingredients. Absent injunctive relief, Defendant will continue to manufacture and sell its personal care Products using the representation "All Natural" and other similar representations, as detailed more fully herein, to the detriment of consumers.

85. By reason of the foregoing, Defendant's conduct, as alleged herein, constitutes deceptive acts and practices in violation of N.Y. Gen. Bus. Law § 349, and Defendant is liable to Plaintiff and the other members of the Class for the actual damages that they have suffered as a result of Defendant's actions, the amount of such damages to be determined at trial, but not less than $50,000.00, such damages to be trebled.

## PRAYER FOR RELIEF

Wherefore, Plaintiff prays for a judgment:

A. Certifying the Class as requested herein;

B. Awarding Plaintiff and the proposed Class members damages, including treble damages and punitive damages;

C. Awarding restitution and disgorgement of Defendant's revenues to Plaintiff and the proposed Class members;

-21-

D. Awarding injunctive relief as permitted by law or equity, including: enjoining Defendant from continuing the unlawful practices as set forth herein, and directing Defendant to identify, with Court supervision, victims of their conduct and pay them all money they are required to pay;

E. Ordering Defendant to engage in a corrective advertising campaign;

F. Awarding attorneys' fees and costs; and

G. Providing such further relief as may be just and proper.

### DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial of her claims by jury to the extent authorized by law.

DATED: March 21, 2013

Respectfully submitted,

Jon A.Tostrud (SBN 199502)
**TOSTRUD LAW GROUP, P.C.**
1901 Avenue of the Stars, Suite 200
Los Angeles, CA. 90067
Telephone:        (310) 278-2600
Facsimile: (310) 278-2640
Email: jtostrud@tostrudlaw.com


Todd S. Garber (*Pro Hac Vice* motion forthcoming)
Jeremiah Frei-Pearson (*Pro Hac Vice* motion forthcoming)
**MEISELMAN, PACKMAN, CARTON & NEALON, SCIALABBA & BAKER P.C.**
1311 Mamaroneck Avenue
White Plains, New York 10605
Telephone:  (914) 517-5000
Fax:  (914) 517-5005

*Counsel for Plaintiff and the Proposed Class*

-22-